Rockingham, }
June 21, 1938. }

DAVID R. SMITH

*v.*

HADDON HOOPER.

*Jeremy R. Waldron, Edgar A. Blanchard* and *Wyman P. Boynton* (*Mr. Waldron* orally), for the plaintiff.

*Arthur E. Sewall* and *Thomas L. Cleaton* (*Mr. Sewall* orally), for the defendant.

PAGE, J. This is the same case which was before us upon exceptions taken at the first trial, *ante*, 36. The essential facts appearing at the second trial were substantially the same as we then held were sufficient to warrant the denial of motions for a nonsuit and a directed verdict. It now appears that when the defendant and his servant stood at the gate to inspect the contestants as they entered the ring, they were both on the right, from which it might be concluded that due care was not taken to ascertain whether the riders carried whips or crops. In this respect the defendant's case stands no better than it did upon the assumption that the fact was as now ascertained.

It now appears that there is no general rule that whips and crops shall be prohibited in balloon games, but it still appears that it was the rule of the defendant to exclude them and that it was his intention to exclude them in this instance. Since it might be found that he was negligent in permitting whips to enter the ring prior to the beginning of the game, thus failing to enforce a rule adopted because

of the danger caused by the presence of such implements, it does not conclusively appear that he was free from fault.

The further question, whether there was evidence that the injuries of Adella Smith resulted from the presence in the ring of a whip or crop, may best be considered in connection with the defendant's motion to set aside the verdict. The only ground here relied upon by the defendant is that the verdict was against the weight of the evidence.

Upon this issue the jury had to pass upon evidence which did not differ materially, except in volume, from that given at the first trial. There is still the positive statement of Adella that the Swenson boy carried a whip with which he struck her horse and caused it to rear and fall with resulting injuries to her. On the other hand, there is still the categorical denial by Swenson that he so struck her horse, or that he even carried a whip or crop.

Supporting the plaintiff, as before, were Adella's mother and another spectator, who testified that Swenson carried a whip, though neither could say that he struck the horse or what caused the horse to rear. A new witness at the second trial, Mrs. Carey, testified to seeing a boy raise a whip before the horse reared, but she was sure that the boy did not strike the horse, and that the boy was not the Swenson boy.

Twelve witnesses (three contestants besides Swenson, five spectators, the defendant and three of the defendant's employes) testified that they saw no whip or crop in the ring during the balloon game. The defendant urges that the weight of the evidence is so overwhelming that the jury must be found clearly to have acted improperly in its consideration. *Wisutskie* v. *Malouin*, 88 N. H. 242. The weight of the evidence is not necessarily to be estimated by the number of witnesses upon the one side and the other.

All such matters are generally problems for the jury. The case is one where it cannot be said by a court of appeal that the jury were clearly motivated by passion and prejudice in weighing the evidence, and the finding of the trial court that they were not so motivated cannot be disturbed upon the facts appearing in the record. Whether or not a contrary finding would be sustainable is a question not presented.

The testimony of Adella and her mother at the second trial introduced a matter not alluded to at the first trial. This was the allegation that the Swenson boy pursued her with the whip for ten or fifteen minutes, after which the children were called to the center of

the ring for further instructions, subsequent to which they again began the game and Adella was hurt. Because of this new situation, the defendant requested the following instruction: "If you find that the plaintiff was pursued by some boy with a crop or whip for several minutes prior to the second time that all the participants were called into the center of the ring for instructions and if you also find an ordinary person of the plaintiff's age and experience would have withdrawn from the game or made some protest to the officials, then you must find for the defendant."

The instruction was given, but substituting for the last seven words the following: "assuming she knew that the rules concerning whips or crops had been violated and that she further knew or was aware that she had a right to complain to the officials on account of such violation, then such conduct on the part of the plaintiff may be considered by you in passing on the question of the negligence of the plaintiff." The defendant excepted "to the refusal of the Court to give certain requests of the defendant."

The matter called to the attention of the court by the request was dual in nature, referring (1) to the danger apparent to the girl's mind as bearing upon withdrawal from the game, and (2) to such a known breach of the rules as warranted her protest to the officials. As to the latter, some modification was necessary with reference to the girl's knowledge of the rules. The defendant's exception does not raise the question of the correctness of the modification with respect to either branch of the case, but merely the question whether the instruction should have been given precisely as requested, so the defendant takes nothing from it.

The other exception to the charge is based upon the theory that there are no set rules for the conduct of balloon games and that therefore the defendant would not be negligent if he had no rule against the carrying of whips and crops. This point has already been decided against the defendant.

The counsel for the plaintiff argued that if the defendant negligently permitted whips in the ring, it did not "make any difference whether this horse went up in the air by being frightened by the whip in the hand of the boy Mrs. Carey saw or whether he went into the air because of the striking by the Swenson boy's whip; if either one of those things caused that horse to go into the air", the girl was "entitled to have . . . [the defendant] pay for his negligence." To this the defendant excepted.

Mrs. Carey's testimony was that a boy followed behind Adella Smith with a whip held up high. "I should say he lifted his hand and the horse saw the whip and started ahead and she pulled him back. I don't think he hit him then, I am quite sure of that . . . I should say he [the horse] sort of—I should say he started forward, she pulled him back, and perhaps I suppose he reared a little." The boy was not close enough to hit the horse. "The horse saw him coming and saw the whip in his hand." If the jury believed this testimony, which went in without objection, they could properly reach the conclusion suggested by the argument.

The counsel for the plaintiff stated in argument that "Mr. Legasse says there were four horses in the bunch there, one of them was in front of her horse." The defendant excepted. What Legasse said was "one in front little bit to the right, the other two at the right of her." Front and little bit to the right is commonly thought of as "in front." No errors are perceived.

*Judgment on the verdict.*

All concurred.